UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────

BARBARA D. RACKER,

                              Plaintiff,

              -vs-                                    04-CV-00125C

ST. BONAVENTURE UNIVERSITY,

                              Defendant.

───────────────────────────────────────────


        In this case, plaintiff Barbara D. Racker claims that she was retaliated against by

defendant St. Bonaventure University, in violation of Title VII of the Civil Rights Act of 1964

and the New York State Human Rights Law, when she refused to sign a provisional

contract for continued employment because she believed it to be part of a discriminatory

scheme to terminate a fellow employee.   Defendant moves (Item 5) to dismiss the

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In response,

plaintiff has filed a cross-motion (Item 12) for leave to amend the complaint to add a cause

of action under 42 U.S.C. § 1981.

        For the reasons that follow, defendant's motion is granted, and plaintiff's motion for

leave to amend is denied.


                              **BACKGROUND**

        Plaintiff alleges that she  was employed by St. Bonaventure University from the fall

of 2000 through May 31, 2002, as Director of the F. Donald Kenney Museum and Art Study

Wing/Curator of Prints and Drawings in the University's Regina A. Quick Center for the Arts

(Item 1, ¶ 6 & Ex. A).  Each of the four "Administrator" positions on the Quick Center's

organizational tier was filled pursuant to a series of renewable, one-year contracts, and each Administrator reported directly to the Director of the Quick Center (*id*. at ¶¶ 8, 13, 15 & Ex. B (Organizational Chart)).  At the time of the events alleged in the complaint, one of the Administrator positions (Director of the Rigas Family Theater) was held by Zoe Walker-Ito, an African-American female (*id.* at ¶ 8).

Plaintiff alleges that at some point in January 2003, she became aware that Ms. Walker-Ito had made a claim of racial discrimination in employment against the University (*id*. at ¶ 9).  Plaintiff further alleges upon information and belief that then-University President Robert J. Wickenheiser and Joseph LoSchiavo, who was hired  by defendant in December 2002 as the Quick Center's new Executive Director, responded to Ms. Walker-Ito's claims "by forming a plan to rid themselves of Walker-Ito without appearing to retaliate against Walker-Ito for her claims of racial discrimination" (*id*. at ¶ 12).  According to plaintiff, the "plan" involved offering Quick Center Administrators "provisional agreements" instead of renewable year-to-year contracts, with the hope that Ms. Walker-Ito would quit rather than accept a provisional appointment (*id.* at ¶ 13).

Plaintiff alleges that she was advised of this plan by Mr. LoSchiavo sometime later in January 2003.  Mr. LoSchiavo explained that the provisional appointment would also mean a change in plaintiff's title from "Director" to "Senior Curator" of the Kenney Museum. When plaintiff voiced her concerns about this proposed "demotion," Mr. LoSchiavo told her she had nothing to worry about because "all the top people at the Quick Center were being offered provisional agreements" to protect against litigation by Ms. Walker-Ito (*id*. at ¶¶ 14-15).

-2-

By letter dated February 12, 2003, Mr. LoSchiavo advised plaintiff that he had undertaken a reassessment of the structure, operations, and programming at the Quick Center, and had proposed certain organizational changes for the department (Item 1, Ex. C).  As a result, it was determined that plaintiff's annual Administrator contract would not be renewed at its expiration on May 31, 2003.  Instead, she would be offered a provisional appointment to the position of "Senior Curator/Curator of Prints and Drawings."  Attached to the letter was a written proposal setting forth the terms of the "provisional (at will) appointment," including a biweekly salary of $1,461.54[1] (*id.*).

Plaintiff alleges that after receiving the letter and the proposed provisional appointment agreement, she told Mr. LoSchiavo and other unnamed University administrators that she would not sign the agreement because she believed that it was part of a scheme to deceive and retaliate against Ms. Walker-Ito (Item 1, ¶ 19).  As a result of her refusal to sign the agreement, her employment ended at the expiration of her contract on May 31, 2003 (*id*. at ¶ 20).

In her first cause of action, plaintiff claims that defendant retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., because she "refused to cooperate in [defendant]'s discriminatory and retaliatory conduct directed at removing Ms. Walker-Eto [sic], and for refusing to participate in a conspiracy in furtherance of such unlawful conduct" (*id.* at ¶ 26).  In her second cause of action, plaintiff claims that defendant's conduct also violated the New York State Human Rights Law (*id.* at ¶ 28).

---

[1]This offer amounted to an annual salary rate of $38,000.00, representing a $1,000 raise over plaintiff's annual salary pursuant to her Administrator Contract for 2002-03.

Defendant moves to dismiss the complaint for failure to state a claim upon which relief can be granted.  According to defendant, even taking all of the facts alleged in the complaint as true, plaintiff can prove no set of facts that would entitle her to relief on her retaliation claim because (1) she cannot demonstrate a good faith, reasonable belief that the defendant's "provisional appointment" process constituted an unlawful employment practice, (2) defendant took no adverse employment action against her, and (3) she cannot establish a causal connection between her purported protected activity and any alleged adverse employment action.

For the reasons that follow, the court finds that plaintiff has failed to allege facts that would entitle her to relief under Title VII or the New York Human Rights Law, and that it would be futile to grant leave to amend in order to allow her to assert a claim under Section 1981.

## DISCUSSION

### I.      Standard for Dismissal under Rule 12(b)(6)

Defendant seeks dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff has failed to state a viable claim for retaliation upon which relief can be granted under Title VII.  Dismissal under Rule 12(b)(6) is appropriate only when it is clear from the facts stated in the complaint, in documents attached to the complaint as exhibits, or in documents incorporated by reference in the complaint, "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Olkey v. Hyperion 1999 Term Trust*, Inc., 98 F.3d 2, 9 (2d Cir. 1996), *cert. denied*, 520 U.S. 1264 (1997); *see also Hayden v. County of Nassau*, 180

F.3d 42, 54 (2d Cir. 1999); *Sullivan-Weaver v. New York Power Auth.*, 114 F. Supp.2d 240, 242 (S.D.N.Y. 2000).  While a court considering a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, the court may properly dismiss the case "if the plaintiff can prove no set of facts that would entitle him to relief."  *Levy v. Southbrook Int'l Invs. Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001) (citations omitted), *cert. denied*, 535 U.S. 1054 (2002).

In making this core determination, the court's task at the Rule 12(b)(6) stage is not to assess the likelihood that the plaintiff will ultimately prevail on the merits, but simply to assess whether the plaintiff is entitled to offer evidence in support of the claims asserted in the pleadings.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *quoted in Sims*, 230 F.3d at 20. Rather, the test is "the legal feasibility of the complaint, not . . . the weight of the evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).

Defendant contends that even taking as true all of the facts alleged in the complaint and evident on the face of the documents attached thereto, plaintiff can prove no set of facts to support any of the elements of a *prima facie* case of retaliation under Title VII or the New York Human Rights Law.  In response, plaintiff contends that this argument misapprehends the Supreme Court's recent holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

*Swierkiewicz* involved a claim brought by a Hungarian national challenging his termination as an underwriter with a reinsurance company.  He claimed he was terminated based on his national origin, in violation of Title VII, and on his age, in violation of the Age Discrimination in Employment Act.  The district court granted the employer's Rule 12(b)(6) motion to dismiss, finding that the plaintiff had not adequately alleged a *prima facie* case of employment discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The Second Circuit affirmed, finding the plaintiff's allegations to be insufficient as a matter of law to support an inference of discrimination. *Swierkiewicz*, 534 U.S. at 509.

The Supreme Court granted *certiorari* to resolve a split among the Circuit Courts of Appeals on the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a *prima facie* case of discrimination under *McDonnell Douglas* in order to survive a motion to dismiss.  The Supreme Court found that the *prima facie* showing under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement," *id.* at 510, and held that a plaintiff alleging employment discrimination need not plead all the elements of a *prima facie* case so long as the complaint provides the defendant "fair notice of what [the] claims are and the grounds upon which they rest" in accordance with Fed. R. Civ. P. 8.  *Id.* at 514.   The Court explicitly rejected the Second Circuit's "heightened pleading standard in employment discrimination cases . . . ," finding it in conflict with Rule 8's requirement that the complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id.* at 512 (quoting Fed. R. Civ. P. 8(a)(2)).  However, the Court noted that a complaint alleging

-6-

employment discrimination might still be dismissed under Rule 12(b)(6) "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In *Timothy v. Our Lady of Mercy Medical Center*, 2004 WL 503760 (S.D.N.Y. March 12, 2004), Judge Casey in the Southern District of New York was presented with an argument similar to the one facing this court with respect to the proper standard, after *Swierkiewicz*, for assessing a Title VII retaliation claim on a Rule 12(b)(6) motion.  Judge Casey declined to adopt the proposition that the pleading need only provide the defendant with fair notice of the retaliation claim in order to survive a motion to dismiss, for the following reasons:

> First, such a position would require the Court to overlook the plain language of *Swierkiewicz*.  Second, doing so would all but eviscerate Rule 12(b) and its proviso that a complaint should be dismissed when a plaintiff fails "to state a claim upon which relief could be granted."  Finally, the consequences of such a position would be significant and adverse to the purpose of Title VII. Its purpose is to assure equality of employment opportunities, to eliminate discriminatory employment practices, and to prohibit retaliation against employees engaged in certain protected activities.  Requiring a plaintiff to plead those facts, which if accepted as true would entitle a litigant to legal relief, furthers this purpose.  There is no doubt that "discrimination is odious but a frivolous or malicious charge of such conduct . . . is at least equally obnoxious."  Adopting the position Plaintiff advances would allow such cases to survive, at least until the summary judgment stage.  Such a result, however, would be unjust to those plaintiffs who present meritorious claims, as it would strain federal dockets and would mean that years would pass before an aggrieved employee could present his claim in court.

*Timothy*, 2004 WL 503760, at *6 (citations omitted).

I find Judge Casey's analysis of the impact of *Swierkiewicz* to be correct, and his reasoning persuasive.  Adopting this approach, if the employment discrimination plaintiff satisfies the "fair notice" pleading standard of Rule 8, the court must still determine whether

the plaintiff has pleaded facts sufficient to state a viable claim upon which relief can be granted pursuant to Rule 12(b)(6).   In this case, as in *Timothy*, the court's review of the complaint indicates that plaintiff has "give[n] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."   *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *quoted in Swierkiewicz*, 534 U.S. at 512; *see Timothy*, 2004 WL 503760 at *5.   Pursuant to Rule 12(b)(6), the court must next determine whether plaintiff has stated a claim upon which relief might be granted, utilizing the *prima facie* standard for retaliation under Title VII as a measure of "legal feasibility."   *Ryder Energy*, 748 F.2d at 779.

## II.    Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).[2] "The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 291-92 (2d Cir. 1998) (citation omitted).

---

[2]In her second cause of action, plaintiff alleges that defendant violated the anti-retaliation clause of New York State Human Rights Law, which provides:

It shall be an unlawful discriminatory practice . . . [f]or any employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [the Human Rights Law] or because he has filed a complaint, testified or assisted in any proceeding under [the Human Rights Law].

N.Y. Exec. Law § 296(1)(e). When determining whether a complaint sufficiently alleges retaliation in violation of both Title VII and the Human Rights Law, courts consider these claims "in tandem . . . because New York courts rely on federal law when determining claims under the New York Human Rights Law." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996) (citing cases).

In order to ultimately prevail on her retaliation claims, plaintiff must first present a *prima facie* case of retaliation, consisting of the following four elements: (1) she was engaged in a protected activity, (2) defendant was aware of her participation in this activity, (3) defendant took adverse action against her, and (4) a causal connection existed between the protected activity and the adverse action. *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001), *cert. denied sub nom. Potter v. Fitzgerald*, 536 U.S. 922 (2002); *see also Timothy*, 2004 WL 503760 at *4 (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)).  If she meets this initial burden, the burden of production shifts to defendant to introduce evidence of a legitimate, non-retaliatory justification for its action. *Tomka v. Seiler*, 66 F.3d 66 F.3d 1295, 1308 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998).  Finally, if defendant meets this burden, plaintiff then has the opportunity to prove that the alleged justification is merely a pretext for retaliation.  *Id.* at 1309.

Defendant contends that based on the facts alleged in the complaint and apparent on the face of attached or referenced documents, plaintiff cannot establish any of the elements necessary to meet her *prima facie* burden.  With regard to the first element–engagement in a protected activity–plaintiff need not establish that the conduct she objected to actually amounted to a violation of Title VII.  *See Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).  However, absent an actual violation, it must be reasonable for the plaintiff to have believed that the challenged conduct violated the law.  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

In this case, plaintiff alleges that she became aware of Ms. Walker-Ito's complaints of race discrimination at some point in January 2003, a short time before she was advised of the defendant's new "provisional appointment" program.   When plaintiff expressed her reservations about the new program, she was purportedly told not to worry because all of the Quick Center Administrators were being offered provisional appointments as a means of protecting the University against litigation by Ms. Walker-Ito.  Plaintiff claims that when she later received the written offer for a provisional appointment, she "repeatedly objected" to the offer, and refused to sign the provisional agreement because she believed it to be "illegal and wrong" as an attempt to retaliate against Ms. Walker-Ito (Item 1, ¶ 19).

Accepting these allegations as true, and considered together with plaintiff's concession that she "neither has, nor had, any means to assess the merits of Walker-Ito's claims" (Item 1, ¶ 11), no reasonable basis exists for plaintiff to have believed that the provisional appointment program constituted an unlawful employment practice prohibited by Title VII.  It is beyond dispute that the program treated all similarly situated employees in the Quick Center equally with respect to their continued employment.  The purported motivation of avoiding litigation, even if true, cannot reasonably be construed to infer any discriminatory conduct directed at Ms. Walker-Ito, or any other University employee. Indeed, there are no facts alleged in the complaint with respect to any adverse employment action suffered by Ms. Walker-Ito, more favorable treatment of employees not in her protected group, or any other circumstances surrounding the provisional appointment program giving rise to an inference of race discrimination.  *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citing several examples of circumstances contributing to permissible inference of discriminatory intent).  Simply put, the complaint

contains no allegations of fact which would form the basis for a good faith, reasonable belief that defendant violated Title VII, or any other law, by offering provisional appointments to each of the Quick Center's Administrators, instead of year-to-year contracts. *Cf. Manoharan*, 842 F.2d at 593-94 (plaintiff claiming retaliation for complaining about Columbia University's selection process for assistant directorship position failed to establish good faith, reasonable belief that the process, as alleged, was properly within the definition of an "unlawful employment practice"); *Byerly v. Ithaca College*, 290 F. Supp.2d 301, 308-09, n. 13 (N.D.N.Y. 2003) (plaintiff's conclusory allegation that she was retaliated against for supporting the hiring of two minority candidates was insufficient to demonstrate involvement in opposing an unlawful employment practice), *aff'd*, 113 Fed.Appx. 418, 2004 WL 2338141 (2d Cir. 2004).

In the absence of a factual basis in the pleadings to support a reasonable belief that defendant's provisional appointment program discriminated against Ms. Walker-Ito, plaintiff cannot plead any set of facts to establish either the first or second *prima facie* elements of her retaliation claim–*i.e.*, that plaintiff participated in a protected activity, and that defendant was aware of her participation in a protected activity.

In order to satisfy the third *prima facie* element–adverse employment action– plaintiff must allege facts sufficient to show that her "demotion" constituted a "materially adverse change" in the terms and conditions of her employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.

1993), *quoted in Galabya*, 202 F.3d at 640.  Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.*  "The key . . . is that the plaintiff must show that the [action] created a 'materially significant disadvantage.'"  *Galabya*, 202 F.2d at 641 (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)).

In this case, plaintiff claims that the provisional agreement offered by defendant changed her title from "Director" to "Senior Curator" of the Kenney Museum (Item 1, ¶ 14), and "converted [her] from an Administrator, with renewable one-year terms, to a non-Administrator, employee-at-will" with indefinite terms (*id.* at ¶ 18).  However, it is well-settled that "[a] change in job title without any change in duties, compensation, benefits or reporting structure, is not an 'adverse employment action'" for Title VII purposes.  *Mitchell v. America Online, Inc.*, 286 F. Supp.2d 325, 327 (S.D.N.Y. 2003) (citations omitted); *see also Evans v. City of New York*, 2003 WL 22339468, at *9-10 (S.D.N.Y. October 14, 2003) (no reasonable juror could find that plaintiff's change in title and minor change in job responsibilities constituted a material change in terms and conditions of employment); *Islamic Society of Fire Dept. Personnel v. City of New York*, 205 F. Supp.2d 75, 85-86 (E.D.N.Y. 2002) (citing cases rejecting various plaintiffs' attempts to show adverse employment action based on subjective feelings about employers' actions).  As is evident from the face of the 2002-03 Annual Administrator Contract and attached job description for the Director position (Item 1, Ex. A), and the offer of Provisional Appointment and

attached job description for the Senior Curator position (*id.*, Ex. C), plaintiff's compensation would have increased by $1,000 annually had she accepted the offer, and her benefits, job duties, and reporting structure would have remained the same.

The court also rejects plaintiff's argument that she suffered an adverse employment action as the result of the termination of her employment.  It is beyond dispute that her employment ended on May 31, 2003, at the expiration of her then-existing one-year contract, when she refused defendant's offer of continued employment on a provisional basis.  Indeed, this is precisely what she alleges in her complaint (Item 1, ¶ 20).  Under these circumstances, the court has no difficulty concluding that plaintiff's termination was the result of her own decision not to accept the University's offer, rather than the result of any adverse, retaliatory action on the part of the employer.  *See Gourdine v. Cabrini Medical Center*, 307 F.Supp.2d 587 (S.D.N.Y. 2004) (granting defendant's Rule 12(b)(6) motion to dismiss Title VII discriminatory discharge claim where plaintiff who was not offered continued employment at expiration of one-year employment contract could not show adverse action), *aff'd in relevant part*, 2005 WL 481652 (2d Cir. March 2, 2005).

Based on this analysis, plaintiff can prove no set of facts to show that she suffered an adverse employment action as the result of defendant's conduct.

Finally, and fundamentally, plaintiff has not alleged facts sufficient to meet the fourth element of a *prima facie* case–a causal connection between the protected activity and the adverse employment action.  In her complaint, plaintiff alleges that she became aware of the provisional appointment program in January 2003 (Item 1, ¶ 14), that she met with Mr. LoSchiavo later in January 2003 to discuss her concerns "about the demotion and its

terms" (*id*. at ¶ 15), that she received a letter from Mr. LoSchiavo, dated February 12, 2003, which included a copy the provisional appointment form (*id*. at ¶ 17), and that, "[f]ollowing receipt of LoSchiavo's letter and provisional agreement," she engaged in protected activity by voicing objections about the program to LoSchiavo and other University administrators (*id*. at ¶ 19).  Plaintiff does not identify any adverse action taken against her by the University after this allegedly protected conduct.  As discussed above, plaintiff's employment was terminated, not as the result of defendant's action, but as the result of operation of contract upon her refusal to accept defendant's offer of a provisional appointment at the expiration of her previous one-year term.

In *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Supreme Court found that the plaintiff could not meet the causation requirement of her retaliation claim where the statement she identified as an adverse employment action was made before the employer received her complaint of discrimination.  *Id*. at 271-72; *see also Beiter v. Runyon*, 50 Fed.Appx. 32, 36, 2002 WL 31478913, at **4 (2d Cir. 2002) (no causal connection where plaintiff did not make a complaint until after alleged adverse actions occurred); *Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 943 (S.D.N.Y. 1996) (no causal connection where plaintiff alleged adverse employment actions which occurred before the plaintiff's EEO complaint was made).  The same rationale applies in this case.  It is beyond dispute that plaintiff's purported complaints about the illegality of the provisional appointment plan were made well after she was first advised of the program, and after she received Mr. LoSchiavo's letter containing written confirmation of their earlier discussions and transmitting the new appointment form.  Again, this is precisely what she

alleges in her complaint (Item 1, ¶ 19).  As in *Clark*, plaintiff cannot meet the causation requirement of her retaliation claim since the conduct which she identifies as an adverse employment action took place before the employer could have become aware of plaintiff's complaints of discrimination.  Accordingly, plaintiff can prove no set of facts to establish the requisite causal connection between any protected activity and any adverse employment action.

Based on this analysis, and having taken as true all of the facts alleged in the pleadings and evident on the face of the documents attached to the complaint, the court finds that plaintiff can prove no set of facts to support any of the elements of a *prima facie* case of retaliation under Title VII or the New York State Executive Law.

## III.    Plaintiff's Cross-Motion to Amend

In response to defendant's motion to dismiss, plaintiff filed a cross-motion seeking leave to amend the complaint in order to add a cause of action for retaliation arising under 42 U.S.C. § 1981.[3]  A motion seeking leave to amend is governed by Rule 15(a) of the

---

[3]42 U.S.C. § 1981 provides:

(a) Statement of equal rights

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

   For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

Federal Rules of Civil Procedure, which states that leave "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Notwithstanding the liberality of this general standard, the court may deny leave to amend when, in the exercise of its "sound discretion," *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.*, 22 F.3d 458, 462 (2d Cir. 1994), it determines that the proposed amendment would be futile.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).   A proposed amendment to a pleading would be futile "if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief."  *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Allowing plaintiff to amend her complaint would clearly be futile in this case.  In order to establish a claim of retaliation cognizable under § 1981, plaintiff must show that she was (1) engaged in an activity protected under anti-discrimination statutes, (2) the defendant was aware of plaintiff's participation in the protected activity, (3) the defendant took adverse action against plaintiff based upon this activity, and (4) a causal connection existed between plaintiff's protected activity and the adverse action taken by defendant. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir.  2001).  These are the very same *prima facie* elements required to establish a claim of retaliation under Title VII.

As the preceding discussion amply demonstrates, plaintiff can prove no set of facts to support any of the elements of a *prima facie* case of retaliation under Title VII or the New

---

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

York Human Rights Law.  It would certainly be futile to grant leave to amend in order to give her the opportunity to make the same showing under a third statute.

Accordingly, plaintiff's cross-motion seeking leave to amend is denied.

## **CONCLUSION**

For the foregoing reasons, the court finds that plaintiff can prove no set of facts that would entitle her to relief on her claims of retaliation under Title VII or the New York State Executive Law, and grants defendant's motion (Item 5) pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

For the same reasons, plaintiff's cross-motion (Item 12) for leave to amend is denied as futile.

The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   June   24   , 2005

p:\opinions\04-125.june2005